Mr. Talbot, are you ready to proceed? Yes, Your Honor. Good morning, Your Honors, and may it please the Court. Dustin Talbot representing Mark Abercrombie in this case. This case presents a straightforward application of this Court's decision in Garner to Louisiana's domestic abuse battery statute. The District Court committed plain error by treating Mr. Abercrombie's Louisiana domestic abuse battery convictions as crimes of violence under the sentencing guidelines. Under Garner, Louisiana's general intent crimes can be committed recklessly or negligently and are categorically not crimes of violence. Louisiana domestic abuse battery, even the strangulation variant, are Louisiana general intent crimes and fit neatly within the Garner rule. The error below had devastating consequences for Mr. Abercrombie. He received a 132-month sentence based on the incorrect guideline range of 110 to 137 months, when his correct range was only 63 to 78 months. In 2022, this Court issued United States v. Garner, which was the first case that applied the Supreme Court Borden decision to Louisiana's unique general intent mens rea regime. And in Garner, this Court was analyzing Louisiana's aggravated assault with a firearm statute, which is the statute that applies when someone shoots a gun at someone else in Louisiana. And to determine whether that was a crime of violence, this Court underwent an exhaustive review of Louisiana's very unique mens rea regime. And in Louisiana, the statutory regime sets forth a general mens rea, right, for general intent that applies to many of the crimes. And as Garner found, Louisiana's general intent mens rea is an objective standard, which is unique among the states, in that it's not concerned with the defendant's state of mind or his intent. Instead, according to Garner, it, quote, Louisiana general intent exists when the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire on his part to have accomplished such result. Put another way, Garner also says that Louisiana general intent is totally unconcerned with the defendant's state of mind. And so Garner tells us that because of Louisiana's unique general intent regime, Louisiana crimes that are general intent crimes can categorically be committed with something less than intentional conduct, reckless or negligent conduct, which under the Supreme Court in Borden means they categorically cannot be crimes of violence under the Elements Clause. And so that brings us to Louisiana domestic abuse battery. Louisiana domestic abuse battery, both its general form and the strangulation form, are both general intent crimes under Louisiana law. And that fact is not disputed by the government. So before you, you have Garner, which says that Louisiana general intent crimes can be committed recklessly and negligently and are categorically not crimes of violence. The government in its response brief stated that the state versus bro case was on point and that that case characterized a domestic abuse battery by strangulation as a specific intent crime. I disagree, Your Honor. So that case is refuted by the case that we cite in our reply brief, which is McGinnis. And so in McGinnis, the Louisiana court system specifically addressed the issue of whether Louisiana domestic abuse battery by strangulation is either a specific intent or general intent crime. And in a detailed analysis, the Louisiana Fourth Circuit says that under Louisiana Revised Statute 1410 and 1411, the language in Louisiana's domestic abuse battery by strangulation creates a general intent crime only. And so because it's a general intent crime, we are unconcerned with the defendant's specific state of mind. And McGinnis goes further than that. Is there a split between the state appellate courts on the issue? I don't believe so, Your Honor. But in McGinnis, what the Fourth Circuit says is that when it applies it to the specific facts of McGinnis, the defendant in McGinnis claimed that he had attempted to restrain his partner and had inadvertently put his hands on her neck, and that he didn't intend to impede her airflow or strangle her, but that was an accident or a consequence of him just trying to otherwise restrain her. And McGinnis says it doesn't matter, right? Because under the objective general intent standard, a reasonable person would know that if you attempt to restrain someone, a probable consequence of that could be that you could impede their airflow if your hands go around their neck, right? So in other words, it didn't matter what Mr. McGinnis's intent was. It didn't matter if he intended to impede the airflow. All that mattered was that a reasonably foreseeable consequence of his actions. And that's the objective general intent standard, right? Which is unconcerned with the defendant's state of mind as this court has held in Garner. And so as a general intent offense, strangulation can be committed with reckless or negligent conduct under Garner and under the Louisiana court interpretation of the general intent mens rea regime. And so that's the McGinnis case, which is the domestic abuse by strangulation actual case presented. But I also want to talk about the generic domestic abuse battery as well. Louisiana's generic domestic abuse battery is also a general intent crime. And we know that from State v. Wilson, State v. Fink, and the specific actual case that we discuss in addition to that is State v. Gatewood, which is a Louisiana Fifth Circuit case, right? And in State v. Gatewood, the Louisiana Fifth Circuit specifically talks about the general intent mens rea required for domestic abuse battery. In Gatewood, the defendant was a passenger in a vehicle when he attempted to stop his partner from driving the vehicle by shifting the vehicle into neutral and removing the  And in the process, he struck or contacted his partner who was driving. And he claimed in the court that that was accidental, that he was just trying to grab the keys forcefully and accidentally contacted his partner. And his partner testified that it was dark and she doesn't know what he intended but that he was mad. And when the case got to the Louisiana Fifth Circuit, they delved into this mens rea issue and decided that it didn't matter what his intent was. It didn't matter if he intended to have contact with the partner or it didn't matter if it was an accident, right? All that mattered was that, and to quote Gatewood, that the defendant in the ordinary course of human experience must have known that his action of moving toward the driver and forcefully removing the keys from the ignition would result in him contacting the driver in a manner in which the driver had not consented. So this is another Louisiana court decision that is applying the objective general intent mens rea to the facts of a domestic abuse battery case and deciding that it does not matter what the intent of the defendant was. To quote Garner, it's wholly unconcerned with the state of mind of the defendant. And so to bring all this back to Borden, right, and the reason why we're here, is that if a crime can be committed with something less than intentional conduct, then it is categorically not a crime of violence, right? The categorical approach looks at the least culpable outcome of a statute, and if that least culpable outcome is broader than, in this case, the elements clause, the use of force clause, then it's categorically not a crime of violence. So like the assault with a firearm, the aggravated assault with a firearm statute in Garner, Louisiana domestic abuse battery has the same general intent mens rea and can be violated with a less than intentional conduct. And Your Honor, the error in this case is not harmless. The government argues that the court filled out a box on a statement of reasons where it checked a form that said that the court might impose the same sentence irrespective of the guideline calculations. And I think the court should reject that argument, okay? So to recap, in this case, there was no objection below, right? This is a plain error appeal. And so the court at the sentencing only had the incorrect guideline before it. And it sentenced Mr. Abercrombie within that incorrect guideline, okay? And then once the court gets back to its office and is filling out the sealed statement of reasons, there's a box on the form that says the court would impose the same sentence if the guidelines were incorrect, and this court checked that box, right? And I don't think that's enough to overcome harmless error for a couple reasons. One, this court's line of cases that allows for harmless error to be proven by the government because the court says that it would have imposed the same sentence has some specific requirements that this check box doesn't do, right? This court has required the sentencing judge to assess both the correct and incorrect guideline and say that it would have imposed the same sentence regardless. So in other words, if this court would have, if the sentencing court would have known of the 63 to 78-month guideline and then said in open court, hey, I would have given you the same sentence whether I would have granted your PSR objection, then that would satisfy this court's precedent on harmless error, but that didn't happen here. And we just have a generic check box that doesn't tell us at all what the judge would do if faced with 63 to 78 months, right? Isn't this plain error review, though? It is plain error review, yes, Your Honor. So if the court checked the box, tell me why the record isn't silent here? I mean, I understand it's a non-standard box, but don't we have to look at whether the record is silent on what the court would have done if the guideline calculation is erroneous? Well, Your Honor, I think if the record is silent, I think that you have to remand under Molina, the Supreme Court case, which says that even under plain error, if the court sentenced under the incorrect guideline range and the current sentence would be above the corrected guideline range, in the ordinary case, the court should remand for re-sentencing under both the third prong of plain error, the effect on substantive rights, and also under the fourth prong, and whether it affects the fairness, because generally, the Supreme Court has instructed that a person is entitled to be re-sentenced. There's an exception to that, which is what the government's trying to invoke, which is that the record shows the court would have given the same sentence anyways. And what I'm saying is that the court didn't say that at sentencing, which is a Diggles problem, as I raise in the reply brief, right? The court doesn't orally say, hey, I would have given you the same sentence even if the guidelines are different. So he never got a chance to respond. So there's an oral pronouncement problem. But also, the checkbox has nothing unique in it. It doesn't say, here are the specific reasons why I would still give you 132 months, even if the guidelines were, if the offense level was two levels lower, or four levels lower, or in this case, it would be six levels lower. And so there's no evidence in the record that the court would have imposed the same sentence if it knew the guidelines should have been half of what they were. Maybe it would impose the same sentence if it was a little bit lower. But there's no analysis to look at that. But it seems two different issues. No analysis versus nothing in the record. Can we agree that there's something in the record because the court checked this box? Of course. I mean, that is in the record. There is a checkbox on the statement of reasons. So are we talking about the sufficiency of what's in the record? Absolutely. There's a sufficiency problem. There's also an oral pronouncement problem in that the defendant was not present for that announcement that the judge would have imposed the same sentence, which is not, you know, typically our judges say that in our district. They'll say, hey, I've considered these different guidelines and I would impose the same sentence. And those cases survive harmless error for the government. But there was no chance for the defendant to address that. And that really goes to like one of the other problems that we've raised in this brief, which is the Ochoa Cruz problem, which is that the court just relied on the PSR's, you know, assertion that these were crimes of violence without actually, you know, doing any independent research or requiring there to be something else in the record to show that. If the court would have complied with Ochoa Cruz, then this issue would have been raised in the sentencing court. The government would have had to prove up that these were crimes of violences. These issues would have come out and we wouldn't be, you know, here talking about a plain air appeal and we wouldn't be worried about something that happened in chambers when a box was checked and wasn't fleshed out in the sentencing hearing if the court would have complied with Ochoa Cruz, which is a binding decision that says that courts should not just solely trust PSR's in crimes of violence determination. That's the reason that we also raised that additional error in the brief. Because they kind of all mesh together in depriving kind of like this substantive discussion that should have happened at the sentencing. It's also the defendant's fault for not raising it, right? But Ochoa Cruz says that even on plain air, the court should have done it himself. And so . . . If you didn't raise Diggles until your reply brief, is it properly before us, A, and B, is it applicable here since it dealt with the imposition of conditions of supervised release? Have you cited us to anything that's binding here? So, to answer both of your questions, first, I do think it's proper to address in the reply because the statement of reasons was raised by the government in their brief as an affirmative defense to prong three and four. So I think it was appropriate to reply. Diggles is . . . its holding is limited to supervised release conditions. And I did not find a case from this court that extends Diggles specifically to this inoculating statement language that we're dealing with here. But, certainly, this court has applied Diggles in other circumstances when it comes to unpronouncements of . . . when the court bases the decision on things that are not pronounced in court. For example, when there are additional, you know, recommendations to prison that has come into judgments that weren't talked about in court. So it has applied Diggles further, but not to an inoculating statement. Because, honestly, this is one of the first times I've seen that happen where it didn't . . . it wasn't stated in open court. Your Honor, I see I have a couple minutes left. I'll reserve the rest of my time for rebuttal. We'll see you there. Good morning, Your Honors, and may it please the Court. Celia Choi, on behalf of the United States. The Court should affirm the judgment of the District Court. Mr. Abercrombie's claims of substantive and procedural error, all raised for the first time on appeal, both fail. First, the District Court did not clearly and obviously err in applying the crime of violence enhancement based on Abercrombie's prior domestic abuse battery convictions, two of which the record demonstrates were for the strangulation version of the offense. Second, the District Court did not commit procedural error. Mr. Abercrombie's claim rests on an overruling of an overbroad ruling of Ochoa Cruz, which would require the District Court to examine the Shepard documents in every case. That is not the law and would serve no purpose, whereas here the PSR sufficiently identified the prior offenses of conviction without objection from the parties. Are you contending that domestic abuse battery and strangulation are crimes of violence? Yes, Your Honor. The appellant's argument to the contrary rests on an over-reading of this Court's opinion in Garner. In Garner, the Court examined a specific Louisiana statute, which was aggravated assault with a firearm, and its holding rested on its careful examination of the text of that statute and of Louisiana case law applying that statute in actual cases. The opinion admittedly has some broad language, but I don't believe that the Court intended to rule upon every single Louisiana general intent crime in one fell swoop. For one thing, that would be in conflict with this Court's actual case requirements, which require a defendant to come forward with actual case law demonstrating that the state would apply the statute in the manner in which he's advancing. And that requirement is rooted in principles of federalism, which instructs federal courts not to simply opine on the meaning of state statutes without looking at how the state courts actually apply those statutes. Another reason I don't believe that the Garner Court intended such a broad holding is that that would cut a very broad swath through a wide range of statutes. Under Louisiana Revised Statute Section 1411, any statute that doesn't specify the mens rea required to commit the offense is a general intent statute. And that is a category that includes such offenses as armed robbery, aggravated rape, and carjacking, offenses that are plainly crimes of violence, and it's hard to imagine how they could be committed negligently or recklessly. This Court has declined to extend Garner's holding to new statutes on plain error review such as here, as demonstrated in the Forbito case, which is cited by both parties. There, the Court emphasized that the statute before it was a different statute, which was not considered in Garner, and therefore declined to hold on plain error review that Garner governed that statute. Mr. Abercrombie has attempted to distinguish Forbito by relying on a single Louisiana state case, McGinnis, which he contends demonstrates that Louisiana courts, in fact, hold that domestic abuse battery by strangulation can be committed recklessly. But McGinnis does not support that proposition. In the McGinnis case, the defendant admitted that he placed his arm around the victim's neck and applied pressure, but he denied that he intended to cause the result, strangulation. The domestic abuse battery by strangulation statute requires both an intentional act, a use of force or violence, and an intentional result, which is the impediment of breath or circulation. So in the McGinnis case, the act, the use of force, was admittedly intentional, and that prohibited result was the one that the defendant claimed was unintentional, the strangulation. The elements clause asks this court to look whether the use of force has to be intentional under the statute. So McGinnis does not help Mr. Abercrombie. In addition to the strangulation offenses, Mr. Abercrombie also had a domestic abuse violence third offense conviction, which is also a crime of violence under the guidelines. And for the same reason as I just articulated, this court should not extend Garner to hold that that statute clearly and obviously is not a crime of violence on plain error review. As an additional ground for affirmance, this court could hold that domestic abuse battery by strangulation is a crime of violence under the enumerated offense clause of section 4B1.1 of the guidelines. This court applies what it's described as a common sense approach to determine whether a state crime constitutes an enumerated crime of violence, looking to sources such as the model penal code. The model penal code's definition of aggravated assault includes attempting to cause or causing serious bodily injury, and then defines serious bodily injury as that which creates a substantial risk of death. As a matter of common sense, strangling someone would cause serious bodily injury under that definition. And this court recognized in Garner that the enumerated offense clause includes crimes that may be committed recklessly. Thus, if your honors believe that the appellant has failed to demonstrate that domestic abuse battery by strangulation clearly and obviously can be committed by negligence alone, then your honors should affirm under the enumerated offense clause. If there are no further questions about the substantive claims, I'll turn to the procedural claims at issue here. So, as an initial matter, regardless of whether it was error not to submit the Shepard documents at sentencing, this court has said that plain error is determined at the time of appellate consideration. The government has moved to supplement the record with those claimed missing documents, and we recognize that your honors have not yet granted that motion. But if you do, that would resolve any claim of procedural error, as the record before this court would be complete. Even if the court declines to supplement the record, however, no procedural error occurred here. Ochoa Cruz does not require the district court to consider the Shepard documents in every single case. In Ochoa Cruz, the court held that the district court plainly erred by relying solely on the type of PSR that was at issue there, which contained a mere characterization of the defendant's past convictions as crimes of violence. The court's reasoning is admittedly somewhat opaque, but the best reading is that the problem with the PSR there was that it didn't sufficiently identify the crimes of conviction, and therefore did not supply an adequate basis for the court to apply the categorical approach. Where a PSR is deficient in that manner, the district court cannot simply rely on the factual basis of those convictions, and it can't simply rely on a characterization of the crimes as crimes of violence, because that would conflict with the categorical approach that's mandated by the Supreme Court. Nothing in the Ochoa Cruz opinion suggests that the court intended to carve out an exception to the general rule that a district court can adopt the uncontested facts in the PSR, or to impose a uniquely burdensome requirement that the district court examine the Shepard documents to confirm the fact of a prior conviction, where there's no dispute about what that conviction was or the specific subsection of the crime of prior conviction. So under a proper reading of Ochoa Cruz, that case has no application here. The PSR in this case specifically identified Abercrombie's past crimes, including the titles of the statutes violated and sentencing information that allowed the court to determine which subsection Abercrombie was convicted of violating. The district court did not commit procedural error by adopting those uncontested facts and applying the categorical approach on that basis. Even if your honors thought that the district court clearly and obviously erred on either of those matters, it still should not remand for resentencing, because any error did not affect the defendant's substantial rights. At sentencing, the district court made clear that the sentence rested on factors that were not dependent on the guidelines calculation, specifically the defendant's extensive and violent criminal history. The district court said, quote, criminal history. I go by criminal history a lot. He then listed the defendant's criminal history, noting that he had nine felony convictions, several of which were violent, convictions for burglary, some drug-related, misdemeanor convictions for domestic violence, child endangerment, DWI. And then he emphasized the defendant's recidivism. He said, quote, that's what I look at, because that tells me a lot, because you've been to jail, you know you've been through all that. I think the district court, after reviewing all of that, also said that he thought a sentence at the top of the guidelines would be appropriate. At any time during that colloquy between the parties in the court, did the judge suggest that there was a possibility that he would go over the guidelines? There was not, Your Honor. The district court indicated that the sentence was going to be within the guidelines, but towards the higher end. So if we agree with counsel on the other side that the incorrect guidelines were used, how is that not enough to remain so that the district court can determine whether or not it needs to make a decision at the top of the appropriate guidelines? The inquiry under Melina Martinez is whether the record was silent about what the district court would do had it been aware of the error in the guidelines calculation. And the record here is not silent. District court's extensive reasoning that he gave her a sentence in the sentencing hearing, he then confirmed in the written statement of reasons where he specifically checked the box that said that he would apply the same sentence based on the 3553A factors, regardless of any error in the guidelines calculation. How is the district court's reasoning extensive? By my count, it's 18 lines. It starts out with, I do find in this case that the guideline range reasonably addresses the real conduct of the defendant, underlines his crime, achieves the goals of section 3553A, and provides an appropriate sentence. He then goes on to talk about the criminal history, but it seems clear from his opening statement that the guidelines are what anchor his assessment. Certainly, he did reference the guidelines. However, his explanation for the sentence explained that the guidelines was not the deciding factor, that the deciding factor was the extensive criminal history. And the statement that Your Honor just quoted, I think, indicates that he was looking at the real conduct of the defendant, regardless of whether these prior crimes qualified within the technical meaning of crimes of violence under the guidelines. They were, by any standard, violent crimes in the ordinary sense, and that's what he was looking at, and that's what he was indicating there. What does it mean for the record to be silent? Did you cite us anything that gives us guidance there? Well, Melina Martinez itself found that the record was silent, and there was simply no discussion of the independent factors on which the sentence was based, and no statement by the district court that it would apply the same sentence regardless of any error. Both of those factors are present here, and it's far from silent. And the burden is on the defendant at this stage to demonstrate that the district court would not have applied the same sentence. Is simply checking a box in the statement of reasons enough to make that clear? And what about the Diggles issue that's been raised by the other side? This is not a case of relying simply on the checked box. Here, the district court at sentencing all but confirmed that his sentence was based on the actual real conduct of the defendant in his extensive criminal history, and then the check box merely confirmed what was apparent from the sentencing, which was that this was a sentence that was justified by factors other than the guidelines. Now, the defendant has raised the Diggles case in his reply brief, and the government submits that that is not the correct frame of reference here. The Diggles line of cases applies when there is a conflict between the oral pronouncement of sentence and the written judgment, and the defendant comes to challenge one of the conditions in the written judgment. This is just a different inquiry. This is on plain error inquiry. This court is to look to the entire record and try to determine what the district court indicated it would have done had there not been an error in the guidelines. But even on- So you see a distinction between imposition of a condition that's part of the sentence versus an explanation for the sentence? I think that's correct, Your Honor, but also that that's not the inquiry that's going on here, and whether it's not a challenge to a conflict between the two parts of the sentence, what we're looking at is the entire record, and does the entire record show what the district court would have done, and we submit that it would here. Even on its own terms, though, the Diggles line of cases, that principle that the written judgment controls applies only when there is a conflict between the oral pronouncement and the written judgment. When there's an ambiguity, then in that same line of cases, the court looks to the entire record and tries to define the intention of the district court. So there's certainly no conflict here between what happened at sentencing and then the checkbox. Even though the district court said it wanted to impose a sentence that was at the top of the guidelines? The district court did not say that it was intending to impose a sentence at the top of the guidelines because of the guidelines. What it said was, the sentence I'm going to impose will be within the guidelines but towards the higher end, just indicating where that sentence would fall. This court's reasoning in for veto is persuasive on that point. In that case, the district court had referenced the guidelines, had stated that the sentence that it would impose was going to be in the middle of the guidelines, but because there were independent reasons given for the sentence that independently justified it, and because the district court stated that it was not relying on the guidelines in applying the sentence, the court found that there was no effect on the defendant's substantial rights. So unless the court has any further questions, the government will rest on its briefs. Thank you, Your Honor. Thank you, Your Honors. Talbot, you have three minutes. Thank you, Your Honor. I want to start with a question, Judge Douglas, that you asked about a circuit split within Louisiana on the strangulation variant. Just to make sure, I went back and looked, and the government cited State v. Gustave and State v. Breaux from the Fifth Circuit, but neither of those cases say that it is a specific intent crime, that is, Louisiana domestic abuse battery by strangulation. Instead, those cases just use the word intentional as they discuss the crime, and as Louisiana Revised Statute 1411 says, the word intentional in Louisiana doesn't mean specific intent. It means general intent, and Garner analyzes that thoroughly and projects the same argument made by the government in Garner that the word intentional in Louisiana means something different. Louisiana's unique in their word intentional means something else. The other thing I want to talk about is the enumerated offense clause that the government is raising, saying that there might be an alternative basis to affirm, which is that Louisiana domestic abuse battery might fall under the enumerated offense. Garner forecloses that argument. Garner addressed that exact same argument and rejected it, and that's Garner at page 684. They say that if the crime can be committed with Louisiana general intent and it is less than intentional, then it also cannot qualify under the enumerated offense clause because those offenses, like aggravated assault, require intentional conduct, so it suffers the same fatal flaw. And so that argument is foreclosed. And the final thing I want to talk about is the conflict between the oral pronouncement and this inoculating statement checkbox. And I'd be remiss if I don't say that Melina Martinez would be all but, you know, gone if judges could just check a form box in a statement of reasons and completely remove any ability for there to be plain air remands if a judge makes a significant guideline error. Melina Martinez is attempting to create this environment where if there's a significant guideline error, defendant should be resentenced, and Melina Martinez talks about how that's not a significant burden for a defendant to just be resentenced unless ensured that they got it right. And so it can't be that checking a box after the sentencing is done and the defendant is gone just completely wipes away any potential error, and I urge the court not to allow that to happen. What about the fact that the court focused on the criminal history here and was really bothered by the criminal history? It did, but it also focused on the guidelines, right? I think it put equal focus on criminal history and the guidelines, and that combination led the judge to 132 months. Maybe the judge would reach 132 months under the lower guideline, but the judge would have to give significantly more reasons to justify such an upward variance, and he doesn't give those reasons here. And so this is an appropriate case where the government can make these arguments on remand and try to get the same sentence from the court. Thank you. Thank you, Your Honors. That ends our oral arguments for today. Court is adjourned. Thank you.